# Kentucky Valley Distilling Co. v. Quartermous et al.

(Decided Nov. 15, 1938.)

DAVIS, BOEHL, VISER & MARCUS for appellant.

LAWRENCE S. GRAUMAN for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Louis Quartermous, 20 years of age, son of appellee Sarah Quartermous, was injured at the distillery of appellant at Limestone Springs, Chapeze, Kentucky, February 2, 1936. From this injury he died on February 5, 1936. Both he and appellant were operating under the Workmen's Compensation Act, Kentucky Statutes, section 4880 et seq. Decedent was unmarried and lived with his mother. Sarah Quartermous, in due course of time, made claim before the Compensation Board for compensation as a total dependent upon her son. On March 2, 1937, the Board awarded her the sum of $5.68 per week for 335 weeks, with 6% interest on all past due payments, and, in addition thereto, actual medical expenses not to exceed the sum of $100, and the further sum of $75 for funeral expenses. Appellant filed a motion for a full board review of the award and the full board sustained the opinion and award made by the Referee. Appellant then filed a petition for review in the Bullitt Circuit Court, and after a hearing judgment was entered affirming the award of the Workmen's Compensation Board. From this judgment appellant appeals.

Reversal is urged on the ground that the death of Louis Quartermous was not the result of an accident arising out of and in the course of his employment, and

also because appellee Sarah Quartermous, mother of the deceased, was not totally dependent upon him.

Decedent began working for appellant about the 1st of December, 1935, and earned $1.25 per day seven days a week. The working hours of Louis Quartermous, who was employed as a fireman's helper at the time of the accident, were from 3 o'clock in the morning to about noon the same day. Several days prior to the accident Quartermous had secured permission through John W. Pugh, night watchman at the distillery, to sleep in the furnace room at the distillery. On the night of the accident Pugh went to Quartermous, who was in the boiler room, and asked him to go with him to help fix a man-lift elevator, which had become fastened. While Quartermous was holding a flashlight for Pugh to release the cable to the lift, the cable slipped and the lift fell, which caused Quartermous and Pugh to fall. From this fall Quartermous sustained injuries which caused his death.

It is appellant's contention that the accident did not occur while Quartermous was on duty and in the regular course of his employment. Pugh testified that he had asked Quartermous to help him on several occasions in making his rounds and doing other things, and that he had done so. An attempt was made to show that it was not necessary for Quartermous to go with the night watchman at the time of the accident, and the night watchman testified that he could have fixed the lift by himself, but it is true, nevertheless, that he attempted to get a member of a crew doing concrete work to go with him to fix the lift prior to the time he asked Quartermous to go with him. Pugh testified that he felt that an emergency existed, and that he thought the lift should be fixed in order that it be in use in case of fire. Appellant also attempted to show by its plant superintendent that, had he been present at the time, he would have told the night watchman to leave the lift alone and that he did not consider that an emergency existed. But on this point greater weight must be given to the testimony of Pugh, who was on the ground, and in charge of the plant at the time the lift got out of order.

The superintendent's answer to the question as to the nature of Quartermous' duties was that Quartermous was to help the night watchman clean up and do most anything he wanted done. He testified as follows:

"Q. 21. Mr. Pugh had no authority to give orders to Quartermous at that time except from three a. m. in the morning until 11 or 12 the following day? A. Well, I don't know. The first place at that time in the morning no one was supposed to be in there except the night watchman and he asked to stay in there where it was warm. He was expected to help Pugh when an emergency came up."

As pointed out, Pugh testified that on several occasions he asked Quartermous to perform certain duties at times other than between the hours of 3 a. m. and noon. It appears that Quartermous did what he was told to do by the night watchman. Pugh's attempt to show that Quartermous performed these tasks for him as a personal favor merits no serious consideration. It is reasonable to infer that Quartermous, employed as a fireman's helper, considered himself as working under the direction of Pugh, and rightly so, notwithstanding the testimony of Pugh and the plant foreman to the contrary. It is clear from the record that he performed the duties Pugh directed him to perform. His conduct was that of a conscientious and willing worker, regardless of the meager wage he was paid.

While it is not necessary in this case to do so, it would not be difficult to draw the inference that both Pugh and the plant superintendent consented to Quartermous' sleeping in the furnace room prior to the time he went on duty at 3 a. m. so that he would be available to help Pugh from time to time. Quartermous knew that Pugh was in charge of the plant at night, and under the circumstances, he had every reason to believe that he was supposed to help Pugh when asked to do so, as it appears he did. It is not difficult to imagine what would have happened to Quartermous' job if he had refused to go with the night watchman to fix the lift on the night he was injured. It is our conclusion that the facts in this case bring it well within the limits discussed in the case of Nugent Sand Company v. Hargesheimer, 254 Ky. 358, 71 S. W. (2d) 647, and that there was ample evidence before the board to support its award. See, also, Blue Diamond Coal Company v. Frazier, 229 Ky. 450, 17 S. W. (2d) 406.

Louis Quartermous turned over his pay check to his mother at the end of each pay period. While it was shown that his mother earned small sums irregularly by

taking in washing, this forms no basis for appellant's contention that she was not totally dependent on her son's wages, small though they were. See Blue Diamond Coal Company v. Frazier, supra; Fordson Coal Company v. Lewis, 266 Ky. 70, 98 S. W. (2d) 63. We see no cause to disturb the Board's ruling in allowing appellee Sarah Quartermous compensation as a total dependent upon decedent.

Judgment affirmed.